IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

AUGUSTA DIVISION

| | | |
|---|---|---|
| VICTOR WADE TAPLEY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CV 113-222 |
| | ) | |
| CAROLYN W. COLVIN, Acting | ) | |
| Commissioner of Social Security | ) | |
| Administration, | ) | |
| | ) | |
| Defendant. | ) | |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Victor Wade Tapley ("Plaintiff") appeals the decision of the Acting Commissioner of Social Security ("Commissioner") denying his application for Disability Insurance Benefits ("DIB") under the Social Security Act. Upon consideration of the briefs submitted by both parties, the record evidence, and the relevant statutory and case law, the Court **REPORTS** and **RECOMMENDS** that the Commissioner's final decision be **AFFIRMED**, that this civil action be **CLOSED**, and that a final judgment be **ENTERED** in favor of the Commissioner.

## I. BACKGROUND

Plaintiff applied for DIB on March 5, 2010, alleging a disability onset date of October 7, 2008. Tr. ("R"), pp. 144-45. The Social Security Administration denied the application initially and on reconsideration. R. 87-90, 95-98. Plaintiff then requested a hearing before an Administrative Law Judge ("ALJ"), R. 99-100, which was held on May 22, 2012. R. 45-84. At the hearing, the ALJ heard testimony from Plaintiff, who was represented by counsel, Plaintiff's

wife, and from Clarence Hulett, a Vocational Expert ("VE"). Id. On August 7, 2012, the ALJ issued an unfavorable decision. R. 23-40.

Applying the five-step sequential process required by 20 C.F.R. § 404.1520, the ALJ found:

1. The claimant has not engaged in substantial gainful activity since October 7, 2008, the alleged onset date (20 C.F.R. § 404.1571 et seq.).

2. The claimant has the following severe impairments: lumbar degenerative disc disease with herniated discs and type II diabetes mellitus (20 C.F.R. § 404.1520(c)).

3. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. § 404.1520(d), 404.1525, 404.1526).

4. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. § 404.1567(b)[1] as follows. The claimant is capable of performing light work with the ability to occasionally lift and/or carry up to 20 pounds as defined in the Dictionary of Occupational Titles and the Regulations, as well as, lift/carry 10 pounds frequently. This includes sedentary work as defined in the Dictionary of Occupational Titles and the Regulations. The claimant has no limits for sitting in an eight-hour workday. He is capable of standing and/or walking for up to 4 hours in an eight-hour workday. The claimant is able to perform occasional postural functions of climbing ramps/stairs and stooping. He is to perform no balancing, no kneeling, no crawling, no crouching, and no climbing of ladders/ropes/scaffolds. He is able to perform no overhead[] lifting with his bilateral upper extremities. In the course of work, the claimant should be allowed the ability to optionally alternate between sitting and standing, but such would not cause him to be off-task. Secondary to his mental impairments, the claimant retains the capacity to understand, remember, and carry

---

[1] "Light work" is defined as work that "involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. § 404.1567(b).

2

       out simple instructions and perform simple, routine tasks as consistent with unskilled work. In affordance of the benefit of the doubt, the claimant is to have no contact in course of work with the general public. The claimant is able to perform sustained work activity on a regular and continuous basis for eight hours per day, forty hours per week. The claimant is unable to perform any past relevant work (20 C.F.R. § 404.1565).

5. Considering the claimant's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that the claimant can perform, including shipping/receiving weigher, laundry press operator, sorter, and final assembler (20 C.F.R. §§ 404.1569 and 404.1569(a)). The claimant has not been under a disability, as defined in the Social Security Act, from October 7, 2008, through August 7, 2012 (the date of the ALJ's decision) (20 CFR 404.1520(g)).

R. 28-40.

When the Appeals Council denied Plaintiff's request for review on September 21, 2013, R. 15-17, the Commissioner's decision became "final" for the purpose of judicial review. 42 U.S.C. § 405(g). Plaintiff then filed this civil action requesting reversal or remand of that adverse decision. Plaintiff argues that the Commissioner's decision is erroneous because the ALJ improperly (1) ignored certain opinions of treating physician Dr. Marc Guitton and consultative psychologists Drs. M. Kevin Turner and Theodore Daniel, and (2) gave great weight to state agency medical consultants Drs. Horace Ball and Alawode Oladele. (See generally doc. no. 9 ("Pl.'s Br.").) The Commissioner maintains that the decision to deny Plaintiff's application is supported by substantial evidence and should therefore be affirmed. (See doc. no. 10 ("Comm'r's Br.").)

## II. STANDARD OF REVIEW

Judicial review of social security cases is narrow and limited to the following questions: (1) whether the Commissioner's findings are supported by substantial evidence, Richardson v. Perales, 402 U.S. 389, 401 (1971); Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991); and (2) whether the Commissioner applied the correct legal standards. Chester v. Bowen, 792

F.2d 129, 131 (11th Cir. 1986). When considering whether the Commissioner's decision is supported by substantial evidence, the reviewing court may not decide the facts anew, reweigh the evidence, or substitute its judgment for the Commissioner's. Cornelius, 936 F.2d at 1145. Notwithstanding this measure of deference, the Court remains obligated to scrutinize the whole record to determine whether substantial evidence supports each essential administrative finding. Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983).

The Commissioner's factual findings should be affirmed if there is substantial evidence to support them. Barron v. Sullivan, 924 F.2d 227, 230 (11th Cir. 1991). Substantial evidence is "more than a scintilla, but less than a preponderance: '[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion.'" Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990) (quoting Bloodsworth, 703 F.2d at 1239). If the Court finds substantial evidence exists to support the Commissioner's factual findings, it must uphold the Commissioner even if the evidence preponderates in favor of the claimant. Id. Finally, the Commissioner's findings of fact must be grounded in the entire record; a decision that focuses on one aspect of the evidence and disregards other contrary evidence is not based upon substantial evidence. McCruter v. Bowen, 791 F.2d 1544, 1548 (11th Cir. 1986).

The deference accorded the Commissioner's findings of fact does not extend to her conclusions of law, which enjoy no presumption of validity. Brown v. Sullivan, 921 F.2d 1233, 1236 (11th Cir. 1991) (holding that judicial review of the Commissioner's legal conclusions are not subject to the substantial evidence standard). If the Commissioner fails either to apply correct legal standards or to provide the reviewing court with the means to determine whether correct legal standards were in fact applied, the Court must reverse the decision. Wiggins v. Schweiker, 679 F.2d 1387, 1389 (11th Cir. 1982).

**III. DISCUSSION**

    **A. Weight of Opinion by Treating Physicians and Consulting Physicians.**

In the Eleventh Circuit, a treating physician's opinion must be given substantial weight. Hillsman v. Bowen, 804 F.2d 1179, 1181 (11th Cir. 1986). Refusal to give a treating physician's opinion substantial weight requires that the Commissioner show good cause. Schnorr v. Bowen, 816 F.2d 578, 581 (11th Cir. 1987). "The [Commissioner] must specify what weight is given to a treating physician's opinion and any reason for giving it no weight, and failure to do so is reversible error." MacGregor v. Bowen, 786 F.2d 1050, 1053 (11th Cir. 1986); see also Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1159 (11th Cir. 2004) (ruling that the ALJ must accord substantial or considerable weight to the opinion of a treating physician unless "good cause" to the contrary is shown); Broughton v. Heckler, 776 F.2d 960, 961-62 (11th Cir. 1985) (same).

The Commissioner, however, is not obligated to agree with a medical opinion if the evidence tends toward a contrary conclusion. Sryock v. Heckler, 764 F.2d 834, 835 (11th Cir. 1985). Indeed, a treating physician's opinion may be properly discounted if it is unsupported by objective medical evidence, is merely conclusory, or is inconsistent with the physician's medical record. Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997); see also Phillips v. Barnhart, 357 F.3d 1232, 1241 (11th Cir. 2004) (affirming ALJ's rejection of treating physician's opinion when such opinion conflicted with the doctor's treatment notes and claimant's testimony regarding her daily activities).

Although a treating physician's opinion must generally be given substantial weight, the same is not true of a consultative physician. As a general rule, the opinion of a one-time examiner is not entitled to great weight and may be discredited by other evidence in the record. Crawford,

363 F.3d at1160-61. In particular, the Commissioner's regulations require that the opinions of examining physicians be given more weight than non-examining physicians, the opinions of treating physicians be given more weight than non-treating physicians, and the opinions of specialists (on issues within their areas of expertise) be given more weight than non-specialists. See 20 C.F.R. § 404.1527(c)(1)-(2), (5).

### B. The ALJ Properly Gave Little Weight to Opinions in Dr. Guitton's Treatment Notes From March 2010 and April 2011 and Great Weight to the Opinions of Drs. Ball and Oladele.

Plaintiff first argues that the ALJ improperly ignored opinions in Dr. Guitton's treatment notes from March 2010 and April 2011. Pl.'s Br., pp. 3-5. Dr. Guitton first saw Plaintiff on January 13, 2010 for a second opinion on pain in his back, hip, and right leg. R. 358-361. Dr. Guitton found that Plaintiff had diminished strength in the right quadriceps and reflexes on the right side, but good strength proximally and distally on the left side. Id. An MRI suggested a herniated disc on the right with a fairly protruded fragment. R. 359. Eight days later, on January 21, 2010, Dr. Guitton performed lumbar discectomy surgery on Plaintiff. R. 350.

Plaintiff returned to Dr. Guitton on March 15, 2010, and Dr. Guitton's notes say that Plaintiff was "doing well" and still had "some occasional pain, difficulty with motion, difficulty with straining or bending but overall seems to be on the right track." R. 360. Dr. Guitton also stated in the "Plan" section of his notes from this visit as follows:

> At this point he is going to file for disability. We think this is reasonable. He has had three total back surgeries at this point. He [sic] first was back in 1994, his second in 1998 and then the one we performed earlier this year. He has significantly narrowed spine from congenital spinal stenosis and now with his third back surgery it is unlikely that he will be able to return to any gainful employment. He and his brother both have significant congenital genetic spinal disease with a very narrowed spinal canal with superimposed disc herniations and nerve injury. We will be glad to fill out any appropriate paperwork and assist him in the process. We will see him back as needed.

Id.

More than one year later, on April 27, 2011, Plaintiff returned to Dr. Guitton "for discussion of paperwork" because he was "seeking disability." R. 406. Dr. Guitton opined that Plaintiff "is still left with some residual deficit, walks with a cane," "continues to have stooped posture, difficulty sitting, standing, walking, and working." Id. Dr. Guitton found that Plaintiff "is unable to do anything productive at this point," and Dr. Guitton opined he did "not believe [Plaintiff] can do any meaningful work either sitting or standing for any length of time." Id.

The ALJ established good cause for assigning Dr. Guitton's opinions little weight because they were inconsistent with (1) Dr. Guitton's own treatment notes, which the ALJ assigned "significant weight," (2) the findings of Plaintiff's primary care physicians, Drs. Randall Colvin and Mark Taylor, (3) the findings of examining physicians, Drs. Lamar Peacock and Frederick House, and (4) the findings of non-examining physicians, Drs. Ball and Oladele. Id.

First, the ALJ identified inconsistencies in Dr. Guitton's own records that establish good cause for rejection of his opinions. After extensively discussing the medical evidence of record, the ALJ first accorded significant weight to Dr. Guitton's treatment note, dated March 15, 2010, that Plaintiff was doing well and "on the right track" following surgery, which he found to be inconsistent with Dr. Guitton's opinion of total disability. R. 37, 360. Indeed, even when Plaintiff's condition should have been at its most severe on January 20, 2011, one day before Plaintiff's surgery, Dr. Guitton found that Plaintiff's gait was "fairly steady," he was in no acute distress, and there was no atrophy in his lower extremities. R. 358-59. Following the surgery on January 21, 2010, Dr. Guitton noted Plaintiff was "doing well" with "no problems" and asked him to "gradually increase his activity." R. 361. During the follow-up visit on March 15, 2010,

Dr. Guitton observed Plaintiff was still "doing well," overall, was "on the right track" despite some occasional pain, and would "see him back as needed." R. 360.

However, the next visit was not until April 2011, when Dr. Guitton explained that Plaintiff was there for disability paperwork, described Plaintiff as stooped and requiring a cane, and opined that Plaintiff could not do "anything productive" or "any meaningful work." R. 406. Dr. Guitton's generalized, unexplained opinion of total disability is entitled to no deference because it is an administrative finding reserved for the Commissioner. See 20 C.F.R. § 404.1527(d)(1) ("A statement by a medical source that you are 'disabled' or 'unable to work' does not mean that we will determine that you are disabled."); SSR 96-5p ("[T]reating source opinions on issues reserved to the Commissioner are never entitled to controlling weight or special significance.").

Second, the ALJ further established good cause for rejecting Dr. Guitton's opinions as inconsistent with those of Plaintiff's primary care physicians, Drs. Colvin and Taylor. R. 37-38. Dr. Colvin's treatment notes, ranging from 2009 through 2012, state that Plaintiff consistently had a normal gait and station without a limp or other asymmetry, with no indication that Plaintiff required a cane. R. 32-33, 35, 36, 38, 329, 335, 441, 452. Indeed, on April 28, 2010, following Plaintiff's back surgery, Dr. Colvin noted Plaintiff was "doing nicely." R. 32-33, 334. Furthermore, on January 11, 2012, Plaintiff reported to Dr. Colvin that he was doing well with no concerns, and a physical examination revealed his gait and station were normal without limp or other asymmetry. R. 36, 38, 451-53. Likewise, in February 2012, Dr. Taylor, who had treated Plaintiff since 2001, noted that Plaintiff was "doing well" with no complaints except that he could not afford insulin. R. 38, 186, 460. The findings by Drs. Colvin and Taylor stand in stark

8

contrast to Dr. Guitton's opinion that Plaintiff needs a cane to walk and has so much difficulty walking and sitting that he is "unable to do anything productive." R. 406.

The ALJ also gave significant weight to consultative examining physicians Drs. Peacock and House. R. 37. Dr. Peacock noted during an examination in July 2010 that Plaintiff was on no pain medication and was in no apparent distress. R. 33-34, 372, 378. Although Plaintiff showed a "slight" limp, he had normal station and did not bring a cane or other assistive device to the examination, despite alleging he used a cane or walker for ambulation. Id. At an examination in July 2011, Dr. House found that although Plaintiff used a cane to get on and off the examination table and required it for tandem gait, he could walk without it. R. 35, 37, 423. Dr. House also found that Plaintiff had full strength in his upper and lower extremities. R. 427.

Plaintiff points to Dr. House's July 2011 consultative examination as support for Dr. Guitton's opinions, arguing that Dr. House stated Plaintiff: (1) could not stand for more than a few minutes; (2) could not walk for more than half a block; and (3) requires a cane. See Pl's Br., pp. 4-5. However, this examination does not support Dr. Guitton's opinions. First, the initial two statements were in the "Present Complaint/Allegations" section of Dr. House's evaluation, and therefore were not Dr. House's opinions. R. 421. Second, as to Dr. House's statement that Plaintiff required use of a cane, substantial evidence supports the ALJ's decision that Plaintiff did not require a cane. R. 36. Indeed, as discussed above, Dr. Peacock noted that Plaintiff did not bring a cane or other assistive device to the July 2010 examination, and on January 11, 2012, Dr. Colvin's examination revealed his gait and station were normal without limp or other asymmetry. R. 33-34, 36, 38, 372, 378, 451-53.

Lastly, in evaluating Dr. Guitton's opinion, the ALJ also gave significant weight to the opinions of state agency medical consultants Drs. Ball and Oladele, who reviewed the record and

9

indicated Plaintiff could perform light work with limitations consistent with the RFC determination. R. 31, 38, 384-391, 429-36. Plaintiff asserts that these opinions are entitled to little weight because they conflict with Dr. Guitton's opinions. However, an ALJ may give state agency opinions great weight if substantial evidence supports them. SSR 96-6p, 1996 WL 374180; Jarrett v. Comm'r of Soc. Sec., No. 10-13911, 2011 WL 1378108, at *3-5 (11th Cir. Apr. 11, 2011) (concluding ALJ properly gave more weight to non-examining consultants' opinions over a treating physician's opinion).

On September 13, 2010, Dr. Ball opined Plaintiff could: (1) occasionally lift and/or carry twenty pounds; (2) frequently lift and/or carry ten pounds; (3) stand and/or walk about two hours in an eight-hour workday; (4) sit about six hours in an eight-hour workday; and (5) push and/or pull an unlimited amount. R. 34-35, 384-391. Dr. Ball also concluded that Plaintiff: (1) could occasionally climb ramps/stairs; (2) could never climb ladders/ropes/scaffolds; (3) could occasionally stoop, crouch, and crawl; and (4) must avoid concentrated exposure to hazards. Id. Dr. Oladele's August 6, 2011 opinions mirrored Dr. Ball's findings except he opined Plaintiff must avoid even moderate exposure to hazards. R. 35-36, 429-36. Contrary to Plaintiff's argument, the ALJ did not err in giving significant weight to the opinions of Drs. Ball and Oladele because they are consistent with the opinions of Drs. Colvin and Peacock and the treatment notes of Dr. Guitton.

In sum, the ALJ properly assigned the disability opinion of Dr. Guitton little weight after considering all the evidence of record and finding the opinion inconsistent with Dr. Guitton's own treatment notes and contrary to substantial evidence, including the opinions of Drs. Colvin, Peacock, Ball, and Oladele. Lewis, 125 F.3d 1440. Additionally, as discussed above, Dr.

Guitton's disability opinion is entitled to no deference because it is an administrative finding reserved for the Commissioner.

### C. The ALJ Properly Evaluated the Opinions of Drs. Turner and Daniel in Determining Plaintiff's Mental Restrictions.

Plaintiff next argues the ALJ failed to "adequately explain why" the findings of psychologists Drs. Turner and Daniel would not have created more significant work restrictions in Plaintiff's RFC determination. (Pl's Br., pp. 5-6.) Dr. Turner tested Plaintiff for Asperger's Disorder during a consultative psychological evaluation on October 19, 2009. R. 367-71. On the Asperger's Disorder Checklist, Plaintiff and his wife endorsed twenty-four out of twenty-five symptoms of Asperger's Disorder. R. 370. On the Gilliam Asperger's Disorder Scale, Plaintiff and his wife completed questions which yielded a score indicating "probable" for Asperger's Disorder. R. 369.

Dr. Turner opined that although the answers indicated Asperger's Disorder, "[i]t is very unusual to diagnose Asperger's disorder in a 45-year-old who has never had a diagnosis related to this." R. 370. Dr. Turner diagnosed Plaintiff with generalized anxiety disorder, dysthymia, ADHD, and ruled out Asperger's Disorder. R. Additionally, Dr. Turner opined that Plaintiff's Global Assessment Functioning Scale Score ("GAF") was a 55. GAF scores of 51 to 60 indicate moderate symptoms (flat affect and circumstantial speech or occasional panic attacks) or moderate difficulty in social, occupational, or school functioning (having few friends or conflicts with peers or coworkers). See Stone v. Comm'r of Soc. Sec., No. 13-12414, 2014 WL 4784117, at *2 n.2 (11th Cir. Sept. 26, 2014) (citing Am. Psychiatric Ass'n, Diagnostic & Statistical Manual of Mental Disorders 32, 34 (Text Revision 4th ed. 2000)).

On a mental impairment questionnaire completed on June 1, 2010, Dr. Turner opined that, while Plaintiff's affect and mood were abnormal because he made jokes of serious matters,

11

the results of his most recent mental status examination were normal. R. 364-66. Plaintiff's thought processes and flow of mental activity were abnormal, but his content of thought, recent and remote memory, and insight, judgment, and impulse control were all normal. Id. Plaintiff's ability to get along with the public, supervisors, and co-workers was abnormal, but his ability to understand, remember, and carry out simple instructions was normal. Id. Furthermore, Plaintiff's ability to deal with changes in the workplace was abnormal, but his ability to make simple work-related decisions was normal, he was unlikely to decompensate under stress, and he was competent to handle funds. Id.

Dr. Daniel conducted a psychological examination on August 24, 2010. R. 380-83. Dr. Daniel opined that Plaintiff's affect was constricted with anxious and depressed mood, but his thought processes were logical and coherent. Id. Plaintiff's memory was two out of four, his concentration was satisfactory, and he was able to subtract serial sevens. Id. Dr. Daniel diagnosed Plaintiff with anxiety, depression, and ADHD, and opined that he: (1) is able to understand and carry out simple instructions; (2) has some difficulty getting along with others; (3) is likely to have some difficulty sustaining attention in order to follow work routines and complete production tasks in a timely manner; and (4) is likely to become angry and frustrated under stressful conditions. Id.

As to Plaintiff's alleged Asperger's Disorder, the ALJ properly explained that it was not a medically determinable impairment. R. 30, 37. No treating, examining, or non-examining physician diagnosed Asperger's Disorder. Contrary to Plaintiff's assertion, Dr. Turner ruled out Asperger's Disorder because (1) Plaintiff and his wife endorsed almost every symptom of Asperger's disorder on a checklist, and (2) "[i]t is very unusual to diagnose Asperger's disorder in a 45-year-old who has never had a diagnosis related to this." R. 37, 316. The ALJ gave

moderate weight to the opinions of non-examining psychologists, Drs. Robert Koontz and Jessy Sadovnik, who found Plaintiff's allegation that he has Asperger's Disorder was not credible. R. 38, 404, 419. Furthermore, the ALJ noted that Plaintiff's ability to work gainfully for many years as an exterminator despite allegedly having Asperger's Disorder does not support his alleged disability due to this condition. R. 30, 172. See Ellison v. Barnhart, 355 F.3d 1272, 1275 (11th Cir. 2003) (finding plaintiff's condition not disabling where claimant worked for several years in spite of condition).

Despite Plaintiff's argument to the contrary, the ALJ's RFC determination is also consistent with Dr. Daniel's opinions that Plaintiff: (1) has some difficulty getting along with others; (2) is likely to have some difficulty sustaining attention in order to follow work routines and complete production tasks in a timely manner; and (3) is likely to become angry and frustrated under stressful conditions. R. 380-83. First, even though Plaintiff admitted he gets along with the public and coworkers, the ALJ included adequate limitations in getting along with others in the RFC finding by restricting Plaintiff's interaction with the public, "In affordance of the benefit of the doubt, the claimant is to have no contact in course of work with the general public." R. 31, 56.

Second, the ALJ accounted for any limitations in attention by restricting Plaintiff to simple and routine tasks. R. 31; see Jarrett, 422 F. App'x at 872 n.1 (noting that the ALJ could account for impairments related to concentration, persistence, or pace by limiting plaintiff to simple or routine tasks if the medical evidence demonstrates that the claimant has the ability to perform those tasks). Substantial evidence supports the ALJ's finding that Plaintiff could perform simple, routine tasks because Drs. Turner and Daniel stated Plaintiff could do so. R. 365, 382. Moreover, Dr. Daniel stated that Plaintiff's concentration was satisfactory because he

could subtract serial sevens, and the Color Trails test administered by Dr. Turner showed Plaintiff had average concentration and above average attention. R. 315, 382; see 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.00(C)(3) ("concentration is assessed by tasks such as having [plaintiff] subtract serial sevens . . .").

Third, Dr. Daniel's opinion about Plaintiff's performance under stress directly contradicts Dr. Turner's opinion that Plaintiff is unlikely to decompensate under stress. R. 364-66, 380-83. However, the ALJ still gave Plaintiff the benefit of the doubt and, as discussed above, limited him to simple, routine tasks with no contact with the general public. R. 31.

Accordingly, the ALJ properly relied on substantial evidence when evaluating the opinions of Drs. Turner and Daniel in determining plaintiff's mental restrictions and incorporated the portions of their opinions supported by the evidence of record in determining Plaintiff's RFC. See Lewis, 125 F.3d 1440; Barron, 924 F.2d at 230.

## IV. CONCLUSION

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** that the Commissioner's final decision be **AFFIRMED**, that this civil action be **CLOSED**, and that a final judgment be **ENTERED** in favor of the Commissioner.

SO REPORTED and RECOMMENDED this 26th day of January, 2015, at Augusta, Georgia.

_____
BRIAN K. EPPS
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA